IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| M2M SOLUTIONS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 12-033 (RGA) |
| | ) | |
| MOTOROLA SOLUTIONS, INC., TELIT | ) | |
| COMMUNICATIONS PLC and TELIT | ) | |
| WIRELESS SOLUTIONS INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS TELIT COMMUNICATIONS PLC'S AND TELIT WIRELESS
SOLUTIONS INC.'S OPENING BRIEF IN SUPPORT OF THEIR MOTION FOR
SUMMARY JUDGMENT RELATED TO DAMAGES BASED ON:**

**(1)  NO WILLFUL INFRINGEMENT;**

**(2)  NO INFRINGEMENT BY PRODUCTS MADE
AND SHIPPED OUTSIDE THE U.S.;  AND**

**(3)  NO INFRINGEMENT BY TELIT COMMUNICATIONS PLC**

---

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com

OF COUNSEL:

David Loewenstein
Clyde A. Shuman
Guy Yonay
Keren Livneh
PEARL COHEN ZEDEK LATZER
1500 Broadway, 12th Floor
New York, NY  10036
(646) 878-0800

*Attorneys for Defendants Telit
Communications PLC and Telit Wireless
Solutions, Inc.*

July 10, 2015

**Table of Contents**

Page

I.    NATURE AND STAGE OF THE PROCEEDING ........................................................1

II.   SUMMARY OF ARGUMENTS.............................................................................................1

    A.    Telit Has Not Willfully Infringed.........................................................................1

    B.    Non-U.S. Sales Are Not Covered By the '010 Patent ...................................2

    C.    Telit PLC Should Never Have Been Sued .........................................................2

III.  INTRODUCTION .............................................................................................................3

    A.    The Parties................................................................................................................3

    B.    Background of the Litigation ...............................................................................3

    C.    There is No Evidence That Telit
        Acted With Objective Recklessness ....................................................................4

    D.    Products Made and Distributed Outside
        the U.S. Cannot Infringe the '010 Patent........................................................6

    E.    There is No Evidence That Telit PLC
        Engaged in Acts of Infringement in the U.S. ..................................................6

IV.   ARGUMENT .......................................................................................................................8

    A.    The Summary Judgment Standard.......................................................................8

    B.    Telit Has Not Willfully Infringed the '010 Patent .......................................9

    C.    Products Made and Shipped Outside
        the U.S. Do Not Infringe the '010 Patent.....................................................11

        1.    The '010 Patent Does Not Have Extraterritorial Effect ..................11

        2.    Telit Has Not Sold or Offered For Sale
            Any Product Made and Shipped Abroad.......................................12

        3.    Telit Has Not "Induced" Third Parties to Import
            Any Product That Was Shipped Outside the U.S. ..........................13

    D.    There is No Plausible Allegation That
        Telit PLC Has Infringed the '010 Patent ...................................................15

1.    Telit PLC Has Not Induced Infringement .......................................................15

2.    Telit PLC Has Not Contributed to Infringement.............................................15

3.    Infringement Liability Cannot Be Imputed to Telit PLC ...............................16

V.    CONCLUSION ........................................................................................................18

## <u>Table of Authorities</u>

Page(s)

### <u>Cases</u>

*Akzona, Inc. v. E. I. Du Pont de Nemours & Co.*,
  607 F. Supp. 227 (D. Del. 1984) .........................................................................16

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.*,
  682 F.3d 1003 (Fed. Cir. 2012).............................................................................9

*Berckeley Inv. Group, Ltd. v. Colkitt*,
  455 F.3d 195 (3d Cir. 2006)...................................................................................8

*Bristol-Myers Co. v. Erbamont, Inc.*,
  723 F. Supp. 1038 (D. Del. 1989) ........................................................................13

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ...............................................................................................8

*Cybiotronics, Ltd. v. Golden Source Electronics Ltd.*,
  130 F.Supp.2d 1152 (C.D. Cal. 2001) ..................................................................14

*DSU Medical Corp. v. JMS Co., Ltd.*,
  471 F.3d 1293 (Fed. Cir. 2006) (*en banc*) ............................................................8

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  769 F.3d 1371 (Fed. Cir. 2014)........................................................... 9, 11, 12, 13

*In re Seagate Tech., LLC*,
  497 F.3d 1360 (Fed. Cir. 2007)........................................................................9, 10

*Ion, Inc. v. Sercel, Inc.*,
  2010 WL 3768110 (E.D. Tex. 2010).....................................................................12

*Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*,
  964 F. Supp. 2d 653 (E.D. Tex. 2013) ..................................................................12

*Largan Precision Co v. Genius Elec. Optical Co.*,
  No. 2013-2502, 2015 U.S. Dist. LEXIS 43073 (N.D. Cal. Mar. 31, 2015) .................. 8, 13, 14

*Maxwell v. K Mart Corp.*,
  851 F. Supp. 1343 (D. Minn. 1994)......................................................................16

*MeadWestvaco Corp. v. Rexam PLC*,
  2012 U.S. Dist. LEXIS 189304 (E.D. Va. 2012)..................................................14

*Metro-Goldwin Mayer Studios Inc. v. Gronkster, Ltd.*,
  125 S.Ct. 2764 (2005) ...........................................................................................15

*Microsoft Corp. v. AT&T Corp.*,
  550 U.S. 437 (2007) ..............................................................................................11

*Mobil Oil Corp. v. Linear Films, Inc.*,
  718 F. Supp. 260 (D. Del. 1989) .....................................................................16, 17

*MONEC Holding AG v. Motorola Mobility, Inc.*,
   897 F. Supp. 2d 225 (D. Del. 2012) ................................................15

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   711 F.3d 1348 (Fed. Cir. 2013)..................................................11

*Quality Tubing, Inc. v. Precision Tube Holdings Corp.*,
   75 F. Supp. 2d 613 (S.D. Tex. 1999)............................................13

*Tarkus Imaging, Inc. v. Adobe Sys.*,
   867 F. Supp. 2d 534 (D. Del. 2012) ............................................9

*TecSec, Inc. v. IBM*,
   769 F. Supp. 2d 997 (E.D. Va. 2011) ...........................................8

*TecSec, Inc. v. IBM*,
   466 Fed. Appx. 882 (Fed. Cir. 2012) ...........................................8

*Tip Sys., LLC v. SBC Operations, Inc.*,
   536 F. Supp. 2d 745 (S.D. Tex. 2008)......................................16, 17

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*,
   617 F.3d 1296 (Fed. Cir. 2010)..............................................12, 13

*U.S. v. Bestfoods*,
   524 U.S. 51 (1998) .......................................................16, 17

*Williamson v. Citrix Online LLC*,
   No. 2011-02409, 2012 WL 2523827 (C.D. Cal. Sept. 4, 2012) ...............10

*Williamson v. Citrix Online, LLC*,
   No. 2013-1130, 2015 U.S. App. LEXIS 10082 (Fed. Cir. Jun. 16, 2015) (*en banc*) ...............10

*Wing Shing Prods. (BVI), Ltd. v. Simatelex Manufactory Co.*,
   479 F.Supp.2d 388 (S.D.N.Y. 2007).........................................13

*Ziptronix, Inc. v. Omnivision Techs., Inc.*,
   No. 2010-5525, 2014 U.S. Dist. LEXIS 149677 (N.D. Cal. 2014) .......... 11, 12, 14, 17

*Zubick v. Zubick*,
   384 F.2d 267 (3d Cir. 1967)................................................16, 17

## **Statutes**

35 U.S.C. § 102(f) ........................................................................2

35 U.S.C. § 112 .........................................................................2, 5

35 U.S.C. § 271(a) ......................................................................13

35 U.S.C. § 271(b) .......................................................................4

35 U.S.C. § 271(c) ....................................................................4, 16

## **Rules**

Fed. R. Civ. P. 30(b)(6) ................................................................4

**<u>Treatises</u>**

5-16 *Chisum on Patents* § 16.06[1][a] (2014)..............................................................17

I.    NATURE AND STAGE OF THE PROCEEDING

In January 2012, M2M Solutions LLC ("M2M") sued Telit Communications PLC ("Telit PLC") and Telit Wireless Solutions, Inc. ("Telit US") (collectively, "Telit") and Motorola Solutions, Inc. ("Motorola") for infringement of two patents.  The Court held a *Markman* hearing invalidating one of the patents, and interpreting certain claim terms, including "permitted caller" and "coded number" in the second patent, U.S. Patent No. 8,049,010 (the "'010 Patent").  (D.I. 94).  All discovery is closed and the parties are in the dispositive and *Daubert* motion stages.

II.   SUMMARY OF ARGUMENTS

A.    Telit Has Not Willfully Infringed

Telit PLC has not infringed as a matter of law, and *a fortiori* cannot be a willful infringer.

In any event, Telit has not acted in an objectively reckless manner.  From the outset, it has relied on its reasonable defenses that proved the patent is both invalid and not infringed, including a reasonable claim construction that would have been dispositive of M2M's claims.

M2M completely changed its original infringement contentions 22 months after the case was filed, and less than a week after the Court's *Markman* decision accepted many of Defendants' proposed claim constructions.  M2M then dropped its direct infringement case against Telit and stayed its entire case against Motorola, admitting that Motorola did not infringe under the claim construction.

Telit is moving to dismiss the remaining claim of indirect infringement of the '010 Patent, which is based solely on "capability to infringe."  (See Telit's Motion for Summary Judgment of Non-Infringement ("Non-Infringement Motion")).  Telit is also moving for reconsideration of the Court's *Markman* determination on means-plus-function limitations ("Reconsideration Motion"), based on the Federal Circuit's recent *en banc* affirmance of a case Defendants cited in their *Markman* brief.

Moreover, the '010 Patent is invalid because it is an assemblage of old parts. Nothing inventive has been added. It is also invalid under 35 U.S.C. § 112. (See Telit's accompanying Motion for Summary Judgment of Invalidity ("Invalidity Motion")). M2M's invalidity expert required 400+ pages to address the proof of invalidity Telit identified.

Additionally, Eveline Wesby-van Swaay, a physician, whose husband was a disgruntled engineer at Nokia at the time the application was filed, is not the person who should have been identified as the inventor of the claimed subject matter – as objective third parties have testified. Because she is not the correct inventor, the '010 Patent is invalid under 35 U.S.C. § 102(f).

Objectively, Telit's defenses are not frivolous and M2M's vestigial indirect infringement case is hanging by a thread, as has M2M acknowledged by filing a new suit on a continuation patent, shortly after it received Telit's expert reports. M2M's changed positions, abandoned claims and new suit speak louder than any allegation it tries to cobble together to demonstrate objective recklessness.

B.     Non-U.S. Sales Are Not Covered By the '010 Patent

The law is well established that U.S. patents do not have extraterritorial effect. Thus, M2M is not entitled to royalties for products made and shipped outside the U.S.

C.     Telit PLC Should Never Have Been Sued

After over three years of litigation and extensive discovery, M2M has not identified any evidence to support its claim that Telit PLC has engaged in activities that could form the basis for any infringement claim. Telit PLC, a United Kingdom company, did not contribute to any alleged infringement because it has sold nothing in the U.S. And, it did not induce infringement either; M2M has pointed to no evidence that Telit PLC specifically intended any U.S. customer to do anything at all. M2M's indirect infringement claims therefore fail as a matter of law. Quite simply, Telit PLC should never have been sued. It was named as a defendant only so that M2M could try to rely on Telit PLC's *worldwide* revenue before a jury.

2

III.    INTRODUCTION

    A.    The Parties

For the reasons explained in detail in its motion to dismiss in the co-pending litigation, Telit PLC does not infringe under any infringement "theory." (See C.A. No. 14-1103-RGA, D.I. 28). It is a publically traded company established in 2004 (Ex. A, ¶ 3),[1] with its principal place of business in London (D.I. 1, ¶ 3).

Telit US is a Delaware corporation, with its principal place of business in North Carolina. (D.I. 1, ¶ 4). It is a subsidiary of Telit PLC. (Ex. B, Tr. 27).

M2M was established just a few days before this suit was filed, solely to sue. (See D.I. 1; Ex. C, Tr. 15 and 31-32).

    B.    Background of the Litigation

On January 18, 2013, M2M served its infringement contentions against Telit (D.I. 46), identifying the SIM card and *outbound* FDN phonebook, as well as associated "AT commands" (e.g., +CLCK, +CPBW and +CPBS). (See, e.g., Ex. D at 2-5, claim elements "52.c" and "52.d"). On April 8, 2013, M2M supplemented its contentions. Twenty-two months after the Complaint was filed, and six days after the Court issued its *Markman* opinion (D.I. 94), M2M served its second supplemental infringement contentions, jettisoning its earlier infringement "theories," and advancing an entirely new one. Neither the SIM card, the FDN phonebook nor the original "AT commands" are mentioned. (See, e.g., Ex. E at 2-11, claim elements "52.c" and "52.d").

As a result of the *Markman* decision, M2M abandoned its direct infringement claims against Telit (Ex. F at 3-4), dropped its claims against two former Motorola products, and stayed

---

[1]    "Ex. __" refers to an exhibit to the Declaration of Keren Livneh, submitted with this memorandum.

its entire case against Motorola, pending appeal.[2]  (D.I. 158).  Each of these actions is an admission that M2M's claims were meritless, and demonstrates that Telit's claim constructions and defenses were objectively well founded.  Moreover, in response to an interrogatory requesting "all evidence" supporting M2M's willful infringement claim, M2M provided conclusory statements only.  (Ex. H at 23-24).  It identified nothing objectively unreasonable.

Three weeks after M2M received all of Telit's expert reports (D.I. 160), which detailed why Telit does not infringe and why the '010 Patent is invalid, M2M filed a new suit on a continuation patent, which had issued six months before the new suit was filed.  The timing of the new suit was not coincidental; M2M recognized the strength of Telit's defenses.

Furthermore, almost two and a half years ago, in a sworn interrogatory answer, Telit explained that Telit PLC does not engage in any act of infringement.  (Ex. I at 4; see also Ex. J at 3).  M2M confirmed this sworn statement in a Rule 30(b)(6) deposition.  (Ex. B, Tr. 92-95).  Throughout the discovery period, Telit PLC reiterated the fact that it did not engage in any of acts of infringement.  (See, e.g., Ex. K at 5-6 and 33; Ex. L at 5, 31-32, 35, 37, 40, 42, 44 and 50).

C.    There is No Evidence That Telit
      Acted With Objective Recklessness

M2M cannot prove the first prong to establish willful infringement:  that Telit acted despite an "objectively high likelihood" that its actions constituted infringement.  (*Infra*, pp. 9-11).  Whether the objective prong has been met is a prerequisite to determining the second, subjective prong:  whether that accused infringer knew or should have known that its actions amounted to infringement.  (*Infra*, pp. 9-10).  Because the first prong is not met, there is no reason to address the second.

---

[2]    Motorola's affiliate sold its entire accused modules business to a Telit affiliate a year before the case was filed.  (See Ex. G at 2-3).

From an objective standpoint, Telit could not possibly have acted with an "objectively high likelihood" that it infringed because M2M did not know what allegedly caused infringement – as evidenced by its late, revised infringement contentions.

Telit's non-infringement defenses, as more fully set out in its Non-Infringement Motion, were and are more than reasonable.  First, M2M has failed to adduce any evidence of Telit's specific intent to infringe the '010 Patent to support its induced infringement claim (at 17-18). Second, M2M can have no contributory infringement claim, as a matter of law, because the accused products admittedly are staple articles of commerce and have substantial non-infringing uses (at 18-20).  Third, M2M's "capability of infringement" argument fails, again as a matter of law (at 2-16).  In addition, M2M's behavior (*supra*, pp. 3-4) is compelling evidence that Telit could not have been "objectively reckless."

Telit's invalidity defenses under § 112, as set out in its Invalidity Motion, are equally reasonable.  They are supplemented by evidence that Eveline Wesby-van Swaay is not the correct "inventor" of the '010 Patent:

- She is a physician, who could not answer simple questions about the claimed subject matter or how it differs from the prior art, and is admittedly not a person of ordinary skill in the art.  (Ex. M, Tr. 34, 67-68, 101-2 and 105; Ex. N, Tr. 21-22, 24, 26-27, 29, 36-37, 56, 69, 98-9, 101, 277 ("I don't know what AT commands are."), 279 and 299 ("Q: Can you explain to me how the MD5 algorithm works?  A: I don't know what it is."); Ex. O, Tr. 36);

- At the time the priority application was filed, her husband, Philip Wesby, worked as an engineer at Nokia and would have been obligated to assign the application to Nokia – which he was looking to leave, and from where he was terminated about a year later.  (Ex. P, Tr. 13, 67 and 69-70);  and

- A third party, whose company briefly owned the '010 Patent application and who worked with Philip Wesby, testified that "Eveline Wesby's name on patents we dismissed as a method of convenience to try and protect Mr. Wesby," who "very proudly and very arrogantly used to talk about himself as a major inventor and that all these inventions were his."  (Ex. Q, Tr. 185).

5

Each of Telit's several invalidity and non-infringement defenses is well supported. As a matter of undisputed fact, M2M cannot prove objective recklessness.

D.    **Products Made and Distributed Outside the U.S. Cannot Infringe the '010 Patent**

A basic tenet of U.S. patent law is that it does not have extraterritorial effect. (*Infra*, pp. 11-12). Therefore, all foreign sales of accused products, which are manufactured in Asia and never enter the U.S., are not infringements, and must be excluded from any damages claim.

The products at issue in this motion never touch U.S. soil. They are made in China by a third party contract manufacturer (Ex. J at 7-8; Ex. B, Tr. 46), and shipped outside the U.S. by a third party distributor located in Hong Kong (Ex. J at 8; Ex. B, Tr. 48). There is no evidence that *any* products shipped outside the U.S. ever entered the U.S. Moreover, even if those products were shipped into the U.S., there is no evidence that Telit intended them to reach the U.S. Indeed, there is no evidence whatsoever – a total failure of proof – that any product shipped outside the U.S. was ever reshipped to the U.S.

E.    **There is No Evidence That Telit PLC Engaged in Acts of Infringement in the U.S.**

More than two years ago, Telit served an interrogatory seeking all evidence M2M had to support its indirect infringement claim. M2M responded with a vague allegation that Telit PLC and Telit US (collectively) somehow "instruct[ed] and encourag[ed] customers to connect [the accused products] to a SIM card…." (Ex. H at 5; "M2M Solutions' infringement theory in which the FDN phonebook on a SIM card is posited as the claimed 'memory module' …."). As explained above, however, M2M's "infringement theory" based on the FDN phonebook and SIM card was abandoned in its second supplemental infringement contentions. (See, e.g., Ex. E). As "support" for its vague allegations, it referred to public documents identified in its first supplemental – and now obsolete – infringement contentions. (*Id.*).

6

M2M further responded that Telit PLC and Telit US "provid[ed] functionality and technical support to customers… ," and "encourag[ed] and assist[ed] customers in using" a Motorola product that is no longer accused of infringement, and referred to documents identified in its two *original*, and discarded, infringement contentions. (Ex. H at 5-7).

Assuming, *arguendo*, that M2M's allegations related to the correct products and the latest of its "infringement theor[ies]" (Ex. H at 5), those allegations are not supported by the documents to which M2M referred. (See Ex. A for a sample). Those documents bear the names "Telit Wireless Solutions" and "Telit Communications S.p.A.,"[3] an Italian subsidiary. (Ex. B, Tr. 27). Telit PLC is not mentioned.

M2M's interrogatory response was never supplemented; and, other than conclusory statements by its expert (who is not qualified to render an opinion on specific intent in any case), M2M has identified no evidence that Telit PLC either induced or contributed to infringement. (See Non-Infringement Motion at 16-20).

In the motion to dismiss Telit PLC in the new litigation, Mr. Yariv Dafna (Telit PLC's Senior Vice President, Corporate Business Development) explained that Telit PLC does not author the technical documents on which M2M relied or distribute them (or any product) to any person in the U.S., and does not offer any technical support to any person in the U.S., or have any customers in the U.S. (Ex. A, ¶¶ 7-11). Indeed, M2M cannot prove any act of infringement by Telit PLC because none was committed. The only connection M2M makes between Telit PLC and this lawsuit is its allegations that Telit PLC "is the ultimate parent" of Telit US, which "is a wholly owned subsidiary" of Telit PLC (D.I. 1, ¶¶ 3-4). For the same reasons, Telit PLC moved to dismiss M2M's claims against it in the new case. (See C.A. No. 14-1103-RGA, D. I.

---

[3]     The documents all have footers, copyright notices and/or text explaining that the technical information is S.p.A.'s.

28).  Moreover, as explained below (*infra*, pp. 15-16), even if those documents were Telit PLC's

documents (which they are not), M2M's allegations fail to prove inducement.

IV.    <u>ARGUMENT</u>

    A.    <u>The Summary Judgment Standard</u>

    Summary judgment is mandated where a party "fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> [S]ummary judgment is essentially "put up or shut up" time for the non-moving
> party:  the non-moving party must rebut the motion with facts in the record and
> cannot rest solely on assertions made in the pleadings, legal memoranda, or oral
> argument.

*Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

    M2M bears the burden of proof on all issues presented in this motion.  Because M2M's

entire case is predicated on indirect infringement, it "bears the 'burden to show direct

infringement for each instance of indirect infringement,'" therefore "failure to uncover evidence

of even a single third-party direct infringer is fatal to its indirect infringement claims."  *TecSec,*

*Inc. v. IBM*, 769 F. Supp. 2d 997, 1013 (E.D. Va. 2011), *aff'd* 466 Fed. Appx. 882 (Fed. Cir.

2012).   To prevail on inducement, M2M also bears the burden to prove specific intent to

encourage another's infringement.  *Largan Precision Co v. Genius Elec. Optical Co.*, No. 2013-

2502, 2015 U.S. Dist. LEXIS 43073 at *27 (N.D. Cal. Mar. 31, 2015).  Furthermore, to prevail

on contributory infringement, M2M must prove that the accused products have no substantial

non-infringing uses.  *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006)

(*en banc*).[4]  The burden to prove willful infringement is squarely on M2M.  (See next section).

---

[4]    It is undisputed that the accused products have substantial non-infringing uses.  See Non-
Infringement Motion at 18-20.

B.    Telit Has Not Willfully Infringed the '010 Patent

In *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007), the Federal Circuit

held that (citation omitted):

> [P]roof of willful infringement permitting enhanced damages requires at least a
> showing of objective recklessness.
>
> *        *        *
>
> Accordingly, to establish willful infringement, a patentee must show by clear and
> convincing evidence that the infringer acted despite an objectively high likelihood
> that its actions constituted infringement of a valid patent.

If this prong is satisfied, "the patentee must also demonstrate that this objectively-defined risk

(determined by the record developed in the infringement proceeding) was either known or so obvious

that it should have been known to the accused infringer." *Id.* "If, however, the first prong cannot be

shown, then the Court should not put the issue of willfulness – including the second 'subjective'

prong – before a jury." *Tarkus Imaging, Inc. v. Adobe Sys.*, 867 F. Supp. 2d 534, 537 (D. Del. 2012)

(citations omitted; granting summary judgment of no willful infringement).  Whether a defense is

objectively reasonable is a question of law for the Court.  *Bard Peripheral Vascular, Inc. v. W.L.

Gore & Assocs.*, 682 F.3d 1003, 1006-7 (Fed. Cir. 2012).

If a defendant "asserts credible, reasonable non-infringement theories, the first prong of

*Seagate* cannot be satisfied."  *Tarkus* at 537 (citations omitted).  This is also true of reasonable

invalidity defenses, including "evidence that the prior art disclosed each element of the asserted

claims, [and] that it would have been predictable to combine and modify the prior art."  *Halo

Elecs., Inc. v. Pulse Elecs., Inc.*, 769 F.3d 1371, 1382 (Fed. Cir. 2014) (affirming finding of no

willful infringement).

In *Tarkus* at 537 (citations omitted):

> [Defendant] Adobe proposed reasonable constructions for the claim terms "output
> device" and "pictorial dynamic range" under which Adobe's accused products
> would not infringe.  Although the Court did not ultimately adopt Adobe's
> constructions for these terms, the fact that Adobe asserted reasonable

9

constructions under which its products would not infringe precludes a finding that the first prong of *Seagate* is satisfied.

In this case, although the Court adopted most of Defendants' proposed claim constructions, the Court did not adopt Defendants' construction related to a "processing module" or "programmable interface" as means-plus-function limitations, either of which would have been dispositive of M2M's claims against Telit. (See D.I. 94 at 12-13). However, Defendants' proposed constructions relied on *Williamson v. Citrix Online LLC*, No. 2011-02409, 2012 WL 2523827 (C.D. Cal. Sept. 4, 2012), and was reasonable particularly in light of the Federal Circuit's recent affirmance of that decision, *en banc*, in *Williamson v. Citrix Online, LLC*, No. 2013-1130, 2015 U.S. App. LEXIS 10082 (Fed. Cir. Jun. 16, 2015). Defendants cited *Williamson* in the Joint Claim Construction Brief (D.I. 68 at 71-72), to support their proposed claim constructions that the claimed "module" and interface were indefinite means-plus-function limitations where no structure was disclosed in the specification. (See Reconsideration Motion). Therefore, Defendants' proposed constructions were entirely reasonable.

Furthermore, prior to this suit, there was no evidence of any reckless conduct by Telit. Indeed, the '010 Patent only issued three days earlier. Telit's litigation conduct cannot establish willful infringement; throughout this case, Telit has relied on (and maintained) reasonable non-infringement and invalidity defenses. There can be no better proof of lack of objective recklessness than M2M's: constantly changing infringement "theories;" failure to identify any factual support for its indirect infringement claim; implicit acknowledgement of the validity of Telit's defenses by withdrawing its direct infringement claim; opting for an entirely different infringement "theory;" abandonment of claims against certain products; and filing a new suit once Telit's proofs were set forth in detail.

Accordingly, Telit has not acted "objectively recklessly."

C.     Products Made and Shipped Outside
the U.S. Do Not Infringe the '010 Patent

1.     The '010 Patent Does Not Have Extraterritorial Effect

"The presumption that United States law governs domestically but does not rule the world applies with particular force in patent law.  The traditional understanding that our patent law 'operate[s] only domestically and d[oes] not extend to foreign activities,' is embedded in the Patent Act itself."  *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 454-55 (2007) (citation omitted).  The general rule is that "no infringement occurs when a patented product is made and sold in another country."  *Id.* at 441; *Halo* at 1381.

"Any doubt regarding whether conduct falls outside the purview of United States patent law should be resolved by the presumption against extraterritoriality."  *Microsoft* at 454. Therefore:

> It is axiomatic that U.S. patent law does not operate extraterritorially to prohibit infringement abroad.
>
> *        *        *
>
> [T]he entirely extraterritorial production, use, or sale of an invention patented in the United States is an independent, intervening act that, under almost all circumstances, cuts off the chain of causation initiated by an act of domestic infringement.

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1371-72 (Fed. Cir. 2013) (citations omitted; emphasis in original).

Therefore, the "place of manufacture and the location of the contemplated sales" are "determinative" of infringement liability.  *Ziptronix, Inc. v. Omnivision Techs., Inc.*, No. 2010-5525, 2014 U.S. Dist. LEXIS 149677 at *15 (N.D. Cal. 2014).

2.     Telit Has Not Sold or Offered For Sale
Any Product Made and Shipped Abroad

M2M's argument that "[i]nfringing sales" include products made and shipped outside the

U.S. fails as a matter of law, even if the product was supposedly "ordered" in the U.S.  (See, e.g.,

Ex. R at 2).

> Even if the Court were to accept Lake Cherokee's position that the negotiation
> and execution of the product supply agreement constituted a "sale," the Court
> must, under *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors
> USA, Inc.*, reject Lake Cherokee's argument that such a sale occurred "within the
> United States" where the product was both manufactured and delivered abroad.
> 617 F.3d 1296 (Fed. Cir. 2010).
>
> *       *       *
>
> The question stemming from Lake Cherokee's position is whether a contract
> between two U.S. companies, negotiated and executed within the United States,
> for the sale of a patented invention with delivery and performance outside of the
> United States, constitutes a sale under § 271(a).  Despite the factual differences,
> the Federal Circuit's analysis in *Transocean* compels this Court to answer that
> question in the negative.  Indeed, the Federal Circuit expressly found that the
> argument that "the location of negotiation and contracting should control is
> contrary to precedent…."  [Citations omitted].  In light of *Transocean*, the Court
> finds as a matter of law that such a contract as we have here is not a sale within
> the United States under § 271(a).  Accordingly, the Court finds that MSI's motion
> for summary judgment of no liability on sales transacted by MAPL should be
> GRANTED with respect to products shipped to customers located outside the
> United States and which never reach the domestic United States market.

*Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653,

657-8 (E.D. Tex. 2013).

Likewise, in *Halo*, the Federal Circuit held that a defendant "did not sell within the

United States those products that [it] manufactured, shipped, and delivered abroad" (at 1381),

and further that "pricing and contracting negotiations in the United States alone do not constitute

or transform those extraterritorial activities into a sale within the United States" (at 1379).  See

also *Ziptronix* at *9 and 14.  Thus, the location of any "order," contract, negotiations and

payment is irrelevant.  *Ion, Inc. v. Sercel, Inc.*, 2010 WL 3768110 at *4 (E.D. Tex. 2010).  In that

case (*id.*):

12

the devices were manufactured in Europe and distributed exclusively to Venezuela, Brazil, and Canada without touching U.S. soil.    ION argues that Sercel, Inc. quoted prices from its Houston offices, that orders were received in Houston, and that payment was received in Houston in U.S. dollars.  In light of *Transocean*, however, the argument that "the location of negotiation and contracting should control is contrary to precedent…."  [Citations omitted].

The analysis for an offer for sale is similar.

An offer to sell, in order to be an infringement, must be an offer contemplating sale in the United States.  Otherwise, the presumption against extraterritoriality would be breached.  If a sale outside the United States is not an infringement of a U.S. patent, an offer to sell, even if made in the United States, when the sale would occur outside the United States, similarly would not be an infringement of a U.S. patent.

*Halo* at 1381; *Largan* at *17.  "Because a sale is infringing only if it occurs within the United States, an offer to sell is not infringement unless the contemplated sale is to occur in the United States."  *Quality Tubing, Inc. v. Precision Tube Holdings Corp.,* 75 F. Supp. 2d 613, 624 (S.D. Tex. 1999); *Wing Shing Prods. (BVI), Ltd. v. Simatelex Manufactory Co.*, 479 F.Supp.2d 388, 406 (S.D.N.Y. 2007) ("plaintiff's 'offer to sell' theory of liability must then fail because the sales contemplated by the offer to sell…were intended to occur outside the United States, and indeed did occur outside the United States").

3.    Telit Has Not "Induced" Third Parties to Import
       Any Product That Was Shipped Outside the U.S.

"[T]he terms 'importation' and 'import'…are to have their plain ordinary meaning of bringing goods into the United States from another country."  *Bristol-Myers Co. v. Erbamont, Inc.*, 723 F. Supp. 1038, 1044 (D. Del. 1989) (interpreting 35 U.S.C. § 271 (g)).

M2M has not identified any evidence that products delivered abroad were ever imported into the U.S.  In any event, Telit is not liable for any importation of products by non-U.S. third parties, into the U.S. (assuming, *arguendo*, that third parties imported those products).  "[L]iability may only attach to that entity which actually 'imports into the United States.'"  *Cybiotronics, Ltd. v. Golden Source Electronics Ltd.*, 130 F.Supp.2d 1152, 1176 (C.D. Cal.

13

2001).  In *Cybiotronics*, defendant sold products in Hong Kong to an intermediary in Hong Kong, which either imported them into the U.S. or sold them to a customer, which imported them.  The Court held that defendant had "not *itself* engaged in the conduct prohibited by the statute, i.e., 'importing into the United States.'"  *Cybiotronics* at 1174 (emphasis in original).

Telit exercises no control over its products after they are shipped.  (See Ex. B, Tr. 57 and 148-49).  Therefore, even if a product delivered outside the U.S. were later shipped into the U.S. by a non-U.S. third party, that importation is not an act of infringement by Telit.

> [Defendant] Genius does not have insight into [its customers'] Apple and Motorola's supply chain after it sells its lenses to the module integrators, and has no idea whether its lenses go into products sold in the United States….Thus, even if Genius induced Apple and Motorola to use its lenses, it lacked the requisite "knowledge that the induced acts constitute patent infringement," because the patented Apple and Motorola end products using its lenses could all be sold outside the United States, where they would not infringe Largan's United States patents.

*Largan* at *30 (citation omitted).

Finally, M2M has identified no evidence that Telit intended or induced third parties to import any accused product distributed outside the U.S. into the U.S., or indeed that any product distributed abroad was ever imported into the U.S.  See *MeadWestvaco Corp. v. Rexam PLC*, 2012 U.S. Dist. LEXIS 189304 at *95 (E.D. Va. 2012) (Plaintiff had no evidence that foreign products were imported; defendant is not liable for inducing infringement for selling products outside the U.S.).  See also *Ziptronix* at *21-22.

M2M admitted it has no direct infringement claim (see Ex. F at 3-4), and cannot prove any act of indirect infringement related to accused products made and shipped outside the U.S.  Therefore, any royalty claim directed to these products must be dismissed as a matter of law.

D.    There is No Plausible Allegation That
Telit PLC Has Infringed the '010 Patent

1.    Telit PLC Has Not Induced Infringement[5]

M2M has not adduced, and cannot adduce, facts supporting its induced infringement

claim against PLC.  Even if Telit PLC distributed product literature and provided technical

support as M2M alleged in its obsolete interrogatory response (Ex. H at 5-7), its claim still fails

as a matter of law.  "[M]ere knowledge of infringing potential or of actual infringing uses would

not be enough here to subject a distributor to liability.  Nor would ordinary acts incident to

product distribution, such as offering customers technical support or product updates, support

liability in themselves."  *Metro-Goldwin Mayer Studios Inc. v. Gronkster, Ltd.*, 125 S.Ct. 2764,

2780 (2005).  "'Allegations of the marketing activities of the Defendants do not, on their own,

demonstrate that Defendants knew such activities were infringing or that Defendants possessed

the specific intent to encourage another's infringement.'"  *MONEC Holding AG v. Motorola

Mobility, Inc.*, 897 F. Supp. 2d 225, 234 (D. Del. 2012).

2.    Telit PLC Has Not Contributed to Infringement

Title 35 U.S.C. §271(c) states in relevant part: "[w]hoever offers to sell or sells within the

United States or imports into the United States a component of a patented machine" infringes.

Telit PLC does not offer to sell, sell or import *any product* in or to the United States.  Because

PLC neither sells, offers to sell or imports anything in or to the U.S. (Ex. I at 4; see also Ex. J

at 3), it *a fortiori* does not sell, offer to sell or import any *component* and therefore, PLC cannot

be a contributory infringer. [6]

---

[5]    For brevity, Telit will not repeat the law on inducement set forth in its accompanying Non-Infringement Motion.

[6]    For the reasons set out in the Non-Infringement Motion, the accused products are staple articles.  Therefore, M2M's contributory infringement claim must be dismissed for another independent reason.

15

3.    Infringement Liability Cannot Be Imputed to Telit PLC

There is no factual or legal support to establish a claim that Telit PLC, a foreign parent, is responsible for any alleged infringement by Telit US, its domestic subsidiary.  In this regard, M2M has only alleged that Telit PLC is the "ultimate parent" of its "wholly owned subsidiary," Telit US.  (D.I. 1, ¶¶ 3-4).

The starting point is the uniformly recognized principle of corporate separateness:

"deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries."

*U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998).  "Limited liability is the general rule, not the exception.  Disregard of the corporate entity is appropriate only in exceptional circumstances." *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 270 (D. Del. 1989) (citations omitted); *Tip Sys., LLC v. SBC Operations, Inc.*, 536 F. Supp. 2d 745, 753-54 (S.D. Tex. 2008); *Zubick v. Zubick*, 384 F.2d 267, 273 (3d Cir. 1967).

Because "substantial" or "exceptional" reasons must exist to disregard the corporate form, the party alleging a parent's liability bears the burden of proof.  *Mobil* at 270-271.  M2M has not alleged any "exceptional circumstances."

It is well established that "[c]omplete ownership and identity of directors and officers are an insufficient basis" to impute liability on the parent.  *Tip Sys.* at 754; see also 753; *Maxwell v. K Mart Corp.*, 851 F. Supp. 1343,1348 (D. Minn. 1994); *Akzona, Inc. v. E. I. Du Pont de Nemours & Co.*, 607 F. Supp. 227, 238 (D. Del. 1984) (100 % ownership is insufficient to prove alter ego or agency); 5-16 *Chisum on Patents* § 16.06[1][a] (2014) .  To impose liability on a parent, far more is required.

Courts look to alter ego, agency or piercing the corporate veil theories and, in those cases, look either for fraud in the establishment of the subsidiary or "total domination" of the subsidiary by the parent.  *Mobil* at 265-72.  Although Courts sometimes use the names of these legal

16

theories interchangeably, each theory has a common thread: "Fraud or something like it are [sic] required." *Mobil* at 268-9. See also *Ziptronix* at *13-14 (noting that plaintiff failed to "treat [defendants] as separate legal entities," and holding that plaintiff "presents no authority or legal analysis establishing a basis for ignoring the corporate form.").

> For liability under the alter ego or agency theory, M2M would have to prove:

> "a lack of attention to corporate formalities, such as where the assets of two entities are commingled, and their operations intertwined. An alter ego relationship might also lie where a corporate parent exercises complete domination and control over its subsidiary."

*Mobil* at 266. See also *Tip Sys.* at 753-56.[7] However, there is no allegation related to any of these factors (not even a conclusory pleading). Indeed, Telit PLC was established a decade before this suit was filed (Ex. A, ¶ 3) and, as a matter of common sense, could not have been established as a vehicle to avoid liability in this suit.

> For liability under the doctrine of "piercing the corporate veil,"[8] M2M would have to prove *total control*, which is differentiated from ordinary "directional control" that all parents exercise:

> [L]iability cannot be imposed on a parent corporation if it exercises only basic directional control over a subsidiary. Every parent corporation, and indeed every majority stockholder in a corporation, exercises this degree of control. In fact, stockholder control over major decisions is required by law. The Supreme Court has rejected holding parent corporations liable for merely exercising this basic level of control that is inherent in stock ownership.

*Ronald A. Katz Tech. Licensing, L.P. v. Verizon Communs., Inc.*, 2002 U.S. Dist. LEXIS 24117 at *8 (E.D. Pa. 2002) (citations omitted), *citing Bestfoods* at 62. In *Tip Sys.* at 754-55, the Court refused to hold the parent liable for infringement because there was no evidence that the parent

---

[7] Fraud or tort liability stemming from the underlying asserted claim (if proven) is insufficient. *Mobil* at 269, citing *Zubick* at 273, which held: "[u]nless done deliberately, with specific intent to escape liability for a specific tort or class of torts, the cause of justice does not require disregarding the corporate entity."

[8] For an analysis of a parent's liability in the patent context, see *Tip Sys.* at 753-4.

exercised "total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation'" (citation omitted).

There is a complete absence of any supporting facts to suggest Telit PLC's "total domination" of Telit US, any fraudulent scheme to avoid liability, or any other basis to impute liability.

V.     CONCLUSION

For the foregoing reasons, M2M's willful infringement claim, its infringement claims directed to products made and shipped outside the U.S., and its infringement claim against Telit PLC, fail as a matter of law.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com

*Attorneys for Defendants Telit Communications PLC and Telit Wireless Solutions, Inc.*

OF COUNSEL:

David Loewenstein
Clyde A. Shuman
Guy Yonay
Keren Livneh
PEARL COHEN ZEDEK LATZER
1500 Broadway, 12th Floor
New York, NY  10036
(646) 878-0800

July 10, 2015

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2015, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on July 10, 2015, upon the following in the manner indicated:

Richard D. Kirk, Esquire                           *VIA ELECTRONIC MAIL*
Stephen B. Brauerman, Esquire
Vanessa R. Tiradentes, Esquire
Sara E. Bussiere, Esquire
BAYARD, P.A.
222 Delaware Avenue, Suite 900
Wilmington, DE  19801
*Attorneys for Plaintiff*

Marc N. Henschke, Esquire                          *VIA ELECTRONIC MAIL*
FOLEY & LARDNER LLP
111 Huntington Avenue, Suite 2600
Boston, MA  02199
*Attorneys for Plaintiff*

Jeffrey N. Costakos, Esquire                       *VIA ELECTRONIC MAIL*
Kadie M. Jelenchick, Esquire
FOLEY & LARDNER LLP
777 E. Wisconsin Avenue
Milwaukee, WI  53202
*Attorneys for Plaintiff*

Jason J. Keener, Esquire                           *VIA ELECTRONIC MAIL*
Jeffrey J. Mikrut, Esquire
Matthew J. Shin, Esquire
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL  60654
*Attorneys for Plaintiff*

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)